**RIVENDELL FOREST PRODUCTS, LTD., on behalf of itself and a class of all those similarly situated, Plaintiff,**

v.

**CANADIAN FOREST PRODUCTS, LTD., Evans Products Co. Ltd., Finlay Forest Industries Ltd., Fletcher Challenge Canada Ltd., Noranda Forest Sales Inc., Northwood Pulp and Timber Ltd., Pope and Talbot Ltd., Proctor & Gamble Cellulose Ltd., Sinclar Enterprises Ltd., Tolko Industries Ltd., Weldwood of Canada Ltd., West Fraser Mills Ltd., Westar Timber Ltd. and Weyerhaeuser Canada Ltd., Defendants.**

Civ. A. No. 91–M–1231.

United States District Court,
D. Colorado.

Jan. 8, 1993.

Charles J. Friedman, Richard G. Sander, David S. Fein, Popham, Haik, Schnobrich & Kaufman, Ltd., Denver, CO, Harold E. Kohn, Steven A. Asher, Scott A. Burr, Kohn, Nast & Graf, P.C., Philadelphia, PA, for plaintiff.

Raymond J. Turner, Craig R. Maginness, Sherman & Howard, Stan L. Spangler, W. Bruce Thompson, Peggy A. Richter, Shaw, Spangler & Roth, Donald K. Bain, Bruce F. Black, Lawrence Michael Zavadil, Holme Roberts & Owen, Bruce A. Featherstone, Kirkland & Ellis, Stephen S. Dunham, Steven M. Kaufmann, Morrison & Foerster, Miles C. Cortez, Jr., Cortez, Friedman & Coombe, Walter A. Steele, Kurt A. Horton, June Baker, White and Steele, P.C., William C. McClearn, James E. Hartley, William E. Mooz, Jr., Holland & Hart, Denver, CO, Gordon B. Spivack, James Eiszner, Paul S. Spivack, Coudert Brothers, New York City, B. Lawrence Theis, Bobbee J. Musgrave, Walters & Theis, Denver, CO, Thomas L. Boeder, David J. Burman, Susan E. Foster, Perkins Coie, Seattle, WA, Robert D. Raven, Melvin R. Goldman, Morrison & Foerster, San Francisco, CA, Richard W. Daily, Burns, Wall, Smith and Mueller, P.C., Denver, CO, Thomas M. Triplett, Schwabe, Williamson & Wyatt, Portland, OR, Dale R. Harris, Davis, Graham & Stubbs, Denver, CO, Hugh Steven Wilson, Christopher O.B. Wright, Jeffrey A. Herbst, Latham & Watkins, Los Angeles, CA, Michael Sandler, Daniel J. Riviera, Foster, Pepper & Shefelman, Seattle, WA, Harvey I. Saferstein, Irell & Manella, Los Angeles, CA, Gregory B. Kanan, Rothgerber Appel Powers & Johnson, Denver, CO, Alan M. Wiseman, Basil C. Culyba, Thomas A. Isaacson, Howrey & Simon, Washington, DC, Donald G. Kempf, Jr., Philip S. Beck, Brian D. Sieve, and Kirkland & Ellis, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

Rivendell Forest Products, Ltd., (Rivendell) filed a class action complaint for damages and injunctive relief on behalf of all persons, corporations and other entities in the United States who purchased Western Canadian softwood lumber products between August 1, 1987 and July 17, 1991, the date of the filing of the complaint, from any of the defendants. The defendants are all Canadian corporations in business in Canada as forest products companies selling lumber products to purchasers in Canada, in the United States and elsewhere. The defendants harvest logs from softwood forests in the Western Canadian provinces of Alberta and British Columbia, convert the logs into lumber products and sell them to the plaintiff and other wholesalers for resale to retail lumber yards and to builders within the United States.

The plaintiff claims that the defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by a combination and conspiracy to artificially raise, fix, maintain or stabilize prices for Western Canadian softwood lumber products sold to purchasers located in the United States by charging those purchasers "phantom freight" rather than actual freight charges. More particularly, the plaintiff claims that the defendants agreed to charge arbitrary weights calculated on the basis of board feet which exceeded the actual weights; that they agreed to keep discounts on the conversion rates of U.S. funds to Canadian funds; that they agreed to charge fixed base rates for all lumber shipped while retaining discounts provided by Canadian and United States railroads; that they agreed to retain for themselves rebates provided to them by the railroads and that they agreed to sell lumber products only on the basis of "delivered" pricing rather than "F.O.B. mill" pricing.

All of the defendants filed motions to dismiss for lack of subject matter jurisdiction under F.R.Civ.P. 12(b)(1) based upon the contention that this court should recognize principles of comity and refuse to apply the Sherman Act extraterritorially. Extensive briefs and additional papers have been filed by the parties and the court has accepted a brief *amicus curiae* of the Government of Canada. The facts which are relevant to this issue are not in dispute. The court accepts as true the allegations of the complaint that the defendants have engaged in a price-fixing conspiracy.

■ In considering these motions, this court is guided the opinion of the Tenth Circuit Court of Appeals deciding *Montreal*

*Trading Ltd. v. Amax, Inc.,* 661 F.2d 864 (10th Cir.1981). There, the Court said:

> The principal purposes of the anti-trust laws are protection of American consumers and American export and investment opportunities. If American interests are at stake we may impose liability for conduct outside our borders that has consequences within our borders. *See Alcoa [United States v. Aluminum Co. of America],* 148 F.2d [416] at 443 [ (2nd Cir.1945) ]. When the contacts with the United States are few, the effects upon American commerce minimal, and the foreign elements overwhelming, however, we do not accept jurisdiction. We believe that the analysis set forth in *Timberlane Lumber Co. v. Bank of America,* 549 F.2d [597] at 613–15 [ (9th Cir. 1976) ], contains the proper elements for consideration. To support jurisdiction of an American court, plaintiff must first show that the challenged activity had an actual effect on United States commerce. Then we must decide if "the interests of, and links to, the United States—including the magnitude of the effect on American foreign commerce—are sufficiently strong, vis-a-vis those of other nations, to justify an assertion of extraterritorial authority." *Id.* at 613.

661 F.2d at 869. The appellate court also considered the factors set forth in Restatement (Second) of Foreign Relations Law of the United States § 40 (1965) and the "jurisdictional rule of reason" articulated by Kingman Brewster in K. Brewster, Antitrust and American Business Abroad 446 (1958).

The plaintiff asserts that such a comity analysis is no longer appropriate because of the enactment of the Foreign Trade Antitrust Improvements Act of 1982, codified as 15 U.S.C. § 6a. It provides that the Sherman Act:

> ... shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect—

> (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>
> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
>
> If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct.

The plaintiff asserts that upon a showing that the foreign defendants' conduct has a direct, substantial and reasonably foreseeable effect on import trade or import commerce, the Sherman Act should be applied without regard to comity. To support that proposition, the plaintiff cites *In re Insurance Anti–Trust Litigation,* 938 F.2d 919 (9th Cir.1991) as eviscerating the approach taken in *Timberlane* by the Ninth Circuit Court of Appeals, which, in turn was relied upon by the Tenth Circuit in *Montreal Trading.* That argument overstates the opinion. While the court said that it is only an unusual case in which comity requires abstention, it did analyze the *Timberlane* factors in reaching the result that comity did not require abstention. The same approach may be taken here.

■ The first question is whether the plaintiff has made an adequate showing of a direct, substantial and reasonably foreseeable effect on import trade or import commerce to avoid the exemption of the Foreign Trade Act. The phrases "import trade" and "import commerce" have not been defined legislatively. The plaintiff says that approximately 75% of the lumber produced in Western Canada is sold into the United States and that Western Canadian softwood lumber sold in the United States amounts to approximately nine billion board feet with a value of almost two billion dollars annually. Rivendell began as a Canadian company in 1979. It merged with a Colorado corporation in 1987. The

plaintiff is not now in business, having failed at a bankruptcy reorganization effort. Throughout the relevant period, Rivendell purchased lumber products from Canadian producers and resold them to customers in the United States. Most of its sales were to lumber yards in the United States which, in turn, sold primarily to the construction industry. The lumber purchased from the Canadian producers was generally delivered by Canadian rail carriers to reload centers in Windsor, Ontario and in Niagara Falls, Ontario or to the United States border where the lumber was then carried by rail or truck to Rivendell's reload centers in the United States. These reload centers served as warehouses for inventory where the products would then be reloaded for delivery to Rivendell's customers. The defendants provide about 15% of the total United States softwood lumber consumption. All Canadian lumber supplies approximately 28% of the United States market for lumber products.

There is a substantial question whether the defendants' conduct in Canada does have a substantial and reasonably foreseeable effect on import trade or import commerce in the United States. However, in the present procedural posture of this litigation, the court will assume that an adequate showing on this issue can be made at trial. Accordingly, the comity question must be addressed.

The interests of Canada in the subject matter of this case are far more substantial than the interests of the United States in obtaining benefits for lumber wholesalers from price competition among Canadian producers of lumber products. All of the defendants are Canadian corporations with Canadian operations. They obtain their products from Canadian forests, most of which are owned by the Canadian federal and provincial governments, which establish fees and policies for harvesting. The shipments involved here were on railroads in which the Canadian government and the province of British Columbia have ownership interests. The very essence of the plaintiff's complaint arises from freight charges made by railroads operating under policies established by the Canadian government concerning rates, rebates and exchange rate charges.

Discovery in this case will principally take place in Canada. It is apparent that extensive third-party discovery must be conducted under the Foreign Extraterritorial Measures Act, the law of Canada.

The plaintiff's position in this case is that the prices of Western Canadian softwood lumber products were artificially inflated by the conspiratorial conduct of the defendants. As shown by the briefing submitted by all parties, the United States and Canada have had a longstanding trade dispute about the prices of these lumber products and the official position of the United States government has been and continues to be that the Canadian government has provided subsidies or their functional equivalents for Canadian producers to deflate the prices of these products sold in the United States to the detriment of competition by American producers of lumber products. While this alone is not dispositive because the issues are somewhat different, the fact that the economic activity which forms the subject matter of this complaint is also the subject matter of an ongoing dispute between nations is a compelling reason to deny extraterritorial application of the Sherman Act to the activities of the Canadian producers in their own country.

There is no showing that the delivered pricing practice of the defendants has been aimed at American imports. The same practices have been followed for shipments in Canada and to other countries. Accordingly, there is no indication of an explicit purpose to harm or affect consumers or businesses in the United States.

If this court were to enter an order of injunction against the defendant companies, it would require them to change established practices in Canada which may conflict with the policies of the Canadian federal and provincial governments. That may well result in an unenforceable decree.

Upon the foregoing, it is this court's finding and conclusion that the principle of comity requires this court to refuse to exer-

1120

cise jurisdiction in this matter and it is therefore

ORDERED that the defendants' motions to dismiss are granted and this civil action is dismissed, without prejudice, for lack of subject matter jurisdiction.